■ In the Matter of ROGER S., Appellant.—In a juvenile delinquency proceeding, the appeal is from an order of the Family Court, Kings County, dated March 3, 1976, which, upon a determination made after a fact-finding hearing that appellant had committed acts which, if done by an adult, *inter alia,* would constitute the crime of murder in the second degree, committed him to the Elmira Reception Center for a period of up to three years. Order reversed, on the law and the facts, without costs or disbursements, and proceeding remanded to the Family Court for a new adjudicatory hearing, including a new determination as to the admissibility of appellant's confes-

sion, and for further proceedings not inconsistent herewith. At the fact-finding hearing Detective Michael J. Juliano testified, *inter alia,* that on December 12, 1975 he was assigned to investigate the fatal shooting of a cab driver, which had occurred at about 2:25 A.M. that morning. According to Juliano, a telephone call was received at the police precinct; the caller stated that the persons responsible for the shooting were appellant and another named person, and that they were then at a specified address in Brooklyn. The caller gave her name as "Mary Lovelace" and also gave her telephone number to the person who received the call. It is not clear from Juliano's testimony whether he received information that the caller also stated that she was the sister of appellant. When he arrived at the precinct on the afternoon of December 12, he proceeded to call the telephone number given by the caller. The person who answered stated that no one named "Mary Lovelace" lived there. Thereafter, according to Juliano, he had brother officers proceed to the address and apartment in Brooklyn where the caller said appellant and his accomplice were staying in order to have them brought to the precinct for questioning. Juliano further contended that appellant, although brought to the precinct from the apartment by the officers, was not placed under arrest by them at the apartment. He claimed that he later arrested appellant at the precinct. However, the only witness to what transpired at the apartment was a purported sister of appellant (her name was not "Mary Lovelace"). She testified that four detectives came to the apartment, put handcuffs on appellant and his alleged accomplice with their hands behind their backs, and then removed them from the premises. She further testified that when she went to the precinct later, she saw appellant handcuffed to a desk. Returning to Juliano's testimony, he stated that appellant and the alleged accomplice were brought to the precinct at the same time and that a statement was first taken from the accomplice, who implicated appellant in the fatal shooting. Thereafter, according to Juliano, he took a statement from appellant in which the latter admitted his involvement in the homicide. Before taking the statement, Juliano advised appellant of his rights in the presence of his sister, an Assistant District Attorney and a stenographer. The Family Court Judge found that the evidence demonstrated that appellant was properly "picked up" by the police and that the arrest was made in the precinct upon information which was sufficient to establish probable cause for the arrest. He also found that the evidence showed, beyond a reasonable doubt, that the subsequent self-incriminating statement made by appellant was voluntary. We disagree with his conclusions. With respect to where appellant was arrested, direct testimony in that regard was elicited from appellant's purported sister, who described his forcible removal from her apartment by four police officers. No other eyewitness testimony was elicited as to what transpired at the apartment. Thus, the Family Court's determination that appellant was actually arrested at the precinct by Juliano is clearly against the weight of the credible evidence. Furthermore, based upon the present record, we do not believe that a trier of the facts would be justified in concluding that the information relayed to Juliano by an unknown fellow police officer or police employee, regarding the contents of a telephone call received from a "Mary Lovelace", constituted probable cause for a warrantless arrest of appellant at the subject apartment. In our opinion, his testimony in that regard is not convincing since, whatever information he did receive, came from an unidentified police source who may or may not have been the person who received the call. In view of the fact that Juliano, when he called the number left by "Mary Lovelace", was informed that no one by that name

lived there, it can logically be argued that the information should have been considered, at the time, as no better than an anonymous tip (see *People v La Pene,* 40 NY2d 210, 221–226; *People v Stewart,* 41 NY2d 65). Therefore, since petitioner did not present sufficient evidence to demonstrate that appellant was legally arrested, a serious question arises as to whether his statement was obtained by exploitation of his Fourth Amendment rights (see *Wong Sun v United States,* 371 US 471). Even if any statements of appellant in this case might be found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. *Miranda* warnings alone cannot always make the act of confessing a product of free will, so as to break, for Fourth Amendment purposes, the causal connection between the illegality of the arrest and the confession. Unlike *Wong Sun v United States (supra),* where, after arraignment and release on his own recognizance from an illegal arrest, the defendant voluntarily returned to the police and made a statement, the direct evidence adduced at the hearing herein is insufficient to show that there was a similar intervening independent act by appellant between the alleged forcible removal from the apartment and the ensuing confession at the precinct some hours later (see *Brown v Illinois,* 422 US 590, 608–612). Thus, we remand for a *de novo* hearing. In order that the Family Court may be in a position to pass upon the probable cause issue, we believe that the petitioner should adduce direct evidence with respect to the telephone call by the informant who identified herself as "Mary Lovelace", and also the link between the person who answered the call and Detective Juliano, who conducted the investigation of the homicide based upon the information obtained therefrom. As to the ultimate issue, namely the voluntariness of the statement made by appellant, we are also of the opinion that testimony should be adduced from the police officers who removed appellant from the sister's apartment, concerning the instructions given them prior thereto and their role in his removal and transportation to the precinct. We also direct that the names of such officers be furnished to appellant's attorney and that the officers be made available to him at the hearing, if counsel so desires. Hopkins, Acting P. J., Titone and Hawkins, JJ., concur; Martuscello and Damiani, JJ., dissent and vote to affirm the order.